533 A.2d 96

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Caesar MONTEVECCHIO.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed Sept. 14, 1987.

Reargument Dismissed Nov. 6, 1987.

436

Timothy J. Lucas, Assistant District Attorney, Erie, for Com., appellant.

Philip B. Friedman, Erie, for appellee.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

TAMILIA, Judge:

Appellee was originally charged with five counts of burglary and related offenses and possession of cocaine with intent to deliver. A motion to dismiss on the part of appellee, under Pa.R.Crim.P. 1100, was granted by the court from which the Commonwealth appeals.

Although some five continuances and/or specific Rule 1100 waivers were entered into by appellee during the course of the two and one-half (2½) year period between appellee's arrest and the granting of appellee's motion to dismiss, the only waiver at issue is the one dated September 8, 1984. The trial court found that this waiver, which extended from "September 14, 1984 to the next regularly scheduled criminal term of the court after rulings on defendant's pre-trial motions" (Defendant's Exhibit. D), was invalid because it was a waiver for an indefinite time and a specific date for expiration of the continuance was required. Further, the court found the application for continuance defective because it was never entered as an Order of Court, filed with the Clerk of Courts or made part of the record.

Factually, the Commonwealth initially mailed the motion for continuance on August 28, 1984, before the run date, to counsel for the defendant, to be completed and returned for filing. When returned by defense counsel on September 12, 1984, the date was altered for beginning the continuance from September 8 to September 14, 1984 and, according to the Commonwealth, this would have permitted a gap in time of six days which would have been detrimental to the Commonwealth. The Commonwealth, therefore, returned the original executed Rule 1100 waiver to appellee and asked him to sign a second one which he never did. Instead, counsel for defendant destroyed both documents. To protect itself, on September 7, 1984, the Commonwealth filed a petition to extend time and obtained a rule to show

cause returnable September 12, 1984. Defendant did not reply nor did he or his counsel attend the hearing scheduled for September 12, 1984.

The Commonwealth now contends the waiver that was executed was sufficiently definite to stop the running of Rule 1100. Further, the Commonwealth asserts it had nothing to gain by the extensions in time which were the result of extensive pre-trial motions made by appellee and appellee was not prejudiced because he was free on bail most of the time. The Commonwealth argues the court applied Rule 1100 in too restrictive or mechanical a fashion and that proper resolution of the proceeding under Rule 1100, considering the circumstances of this case, now requires a reversal.

The Commonwealth also contends that because the petition to extend time, filed by the Commonwealth on September 7, 1984, was not answered or responded to by the defendant/appellee at the hearing set by the court, in which no one on behalf of appellee attended, the defense is deemed to have consented to the petition to extend time. The Commonwealth alleges it was error for the court to hold that because there was no ruling on the Commonwealth's petition to extend time, it was ineffective.

Lastly, the Commonwealth contends it should have been permitted to call the trial judge as a witness to testify as to the parties' understanding with respect to the continuance and that the court erred in limiting its examination of appellee's trial counsel with respect to his availability.

Appellee counters that the record clearly supports the trial court's dismissal under Rule 1100. No waiver was ever placed on record and the Commonwealth's contention that an open-ended agreement existed to indefinitely toll Rule 1100 is meritless and unsupported. The Commonwealth's petition to extend time could not extend or stay Rule 1100 indefinitely because no action was ever taken on it by the Commonwealth. Appellee argues that no abuse of discretion was present in the court's refusal to allow the trial judge to be called as a witness because the offer of

proof as to the judge's proposed testimony showed it was not relevant. The trial judge would not have signed the rule to show cause on the motion to quash, for violation of Rule 1100, filed by the defendant in November 1984 (subsequently withdrawn), or the motion for continuance of November 15, 1984, had any "understanding", to which he was to testify been present. As the court pointed out, cross-examination of appellee's trial counsel was not limited but directed to certain relevant time periods. Lastly, appellee contends the Commonwealth needlessly delayed this case by refusing to provide mandatory discovery material.

The lower court found that while a waiver form was executed between the defendant/appellee and the Commonwealth, effective September 14, to the next criminal trial term following disposition of pre-trial motions, it was invalid because it was not filed of record and it was not specific as to date of termination. Secondly, he concluded the motion of September 7 and hearing scheduled on the motion for September 12, to which the appellee failed to respond, were ineffective to preserve the Commonwealth's right to an extension.

This case presented to the hearing judge serious problems and his reluctance to dismiss was rightfully expressed throughout his Opinion. Applying strict legal principles to the facts presented to him, he was hard put to decide the matter differently.

However, after exhaustively reviewing the record in this case, Rule 1100 and its comments and the case law interpreting the Rule over several years, we conclude that the dismissal of these charges was improper, that they must be reinstated and the cases proceed to trial.

At the outset, it appears the initial problem which resulted in the trial court being placed in a position of attempting to make a difficult decision in an extremely complex case was the fact that the motions judge was not the judge who had spent a year and one-half hearing multiple motions and passing on the prior continuations presented by defendant/appellee. We are convinced that had the original mo-

tions judge passed on this motion, the result would have been otherwise simply because he had a total grasp of all the prior proceedings and would have been able to review the case in its totality with an understanding as to what had transpired before, in court and between counsel, and thereby, would have been in a far better position to determine whether the Commonwealth lacked due diligence or not and to what extent the defendant/appellee produced the resulting confusion and delay. The reason this motion was not heard by the original motions judge was because the Commonwealth, in a move to have the original judge place on record his understanding of what had transpired between the Commonwealth and the defense for purposes of making a record, obtained the recusal of Judge Juliante so he could appear as a witness at the hearing on the motion. This procedural move proved to be a tactical error as the motions judge hearing the present motion refused to permit Judge Juliante to be called as a witness. The result was that the Commonwealth could not present evidence to support its position as to what had transpired, off the record in many cases, and what the court's understanding was as a result of the various proceedings between the trial judge, counsel and the district attorney's office. In his findings, the motions judge believed that the testimony to be presented by Judge Juliante would be irrelevant and, therefore, refused to call him. We agree with the motions judge that such a proceeding is undesirable and probably should not have been undertaken by the district attorney's office. Conversely, however, had the original judge maintained his activity in the case and dealt with this motion, he would have been in a far better position to evaluate the testimony and evidence presented on both sides, as to diligence and as to the defense role in creating the delay and the opportunity for such a motion to dismiss to be presented.

For that reason, we have exhaustively reviewed this record and all of the prior proceedings and testimony and have concluded the motions judge did not put sufficient weight on the totality of circumstances leading to the motion to quash under Rule 1100. In failing to do so, he

gave undue weight to a strict technical interpretation of the Rule 1100 proceeding and did not give adequate weight to the role of the defense in bringing about a situation in which it benefited by its own continuations, delays and opportunism.

The defense, in a perverse fashion, attempts to attribute the delay to the Commonwealth's refusal to go along with it on various discovery motions to obtain extensive materials arising out of wiretaps and files of the district attorney's office. Judge Juliante had hearings on these matters and was in the best position to understand to what degree the Commonwealth was dilatory, if at all, and to what degree it was the defense which brought about the delays and he was also in the best position to determine if this case was, in fact, ready to go to trial at the time the motion to quash, pursuant to Rule 1100, was presented to the court. These are factors which are absolutely essential in determining whether or not the Commonwealth was lacking in diligence and whether or not the defendant was in any way preju- diced by the delay. In fact, from this careful review of the record, it would appear inescapable that the Commonwealth received positively no benefit and in every respect the defense benefited and, in fact, capitalized on this delay. It is safe to say that if the case never came to trial, no one would be happier than the defendant. As we will discuss below, Rule 1100 and the speedy trial provisions are not meant to be a unilateral boon to defendants to be used in any fashion that benefits them, whether to arrive at a speedy trial or to delay a speedy trial. Society also has an interest in speedy trials which requires that persons charged with serious crimes should be brought to trial in an expeditious fashion and not be permitted to delay justice and that cases should not be dismissed summarily or on technical considerations when the totality of the circum- stances would require, in justice, that the case not be dismissed.

To further the analysis of this case, it is absolutely necessary that the factual and procedural history be de-

tailed. On July 28, 1983, the defendant was arrested, at No. 1296 of 1983, and charged with one count of burglary, one count of receiving stolen property and one count of conspiracy. On August 2, 1983, the defendant was arrested, at No. 1589 of 1983, and charged with two counts of burglary. On August 8, 1983, the defendant was arrested, at No. 1298 of 1983, and charged with the violation of the Pennsylvania Controlled Substance, Device and Cosmetic Act. On August 11, 1983, the defendant was arrested, at No. 1100 of 1984, and charged with two counts of burglary, one count of theft and one count of receiving stolen property. On August 28, 1983, the defendant was arrested, at No. 1297 of 1983, and charged with one count of burglary and one count of conspiracy. Preliminary hearings were held on all five cases between August 25, 1983 and January 24, 1984. Appellee's arrest was the accumulation of a long and exhaustive police investigation into crimes with which the appellee was charged, as well as numerous additional investigations involving two homicides, one of which involved the shooting death of an Erie police officer.

After the charges were held for court, defense counsel filed extensive pre-trial motions on each of the five cases requesting pre-trial relief, including, but not limited to, severence of the cases and suppression of evidence, including both hard and soft wire interceptions. Part of the information leading to arrest was gathered through legally authorized wiretaps which produced evidence relating to the burglaries as well as to the homicides, including that of the Erie police officer which had been under investigation for several years. Charges filed against the defendant were vigorously opposed with the preliminary hearings on the five separate charges lasting in excess of eight days. All of the motions outstanding were defense filed pre-trial motions which would only inure to the benefit of the defendant if he prevailed.

Reviewing the record, it appears the Commonwealth was prepared to go to trial within a reasonable time after the charges were filed and that it could in no way benefit from

the extensions or continuations obtained by the defendant. The vigorously pursued discovery motions appeared to be an attempt by appellee's counsel to obtain information, particularly wire tap information, which the Commonwealth could properly maintain, was either not relevant to the defendant or which was not permissible to release because it involved persons protected under the wire tap laws. Part of appellee's exploration extended into attempting discovery as to whether the judge of the Superior Court, who authorized the wire tap, held hearings on the record, in an attempt to obtain transcripts of those hearings if such were available.

In addition, appellee, once he was arrested, was incarcerated for another charge unrelated to those involved in the Rule 1100 motion, that being unlawful possession of an automobile. On May 7, 1984, after serving the minimum sentence, a parole hearing was held before Judge Juliante and the appellee was paroled for the remainder of his eighteen month term while at the same time bond was approved on the outstanding charges. During that parole hearing, testimony was received that there were outstanding charges against the defendant in Erie, dated November 18, 1967, for two counts of robbery which were never brought to trial because the appellee never appeared for his hearings. It was also discovered in the course of the presentence investigation that he had charges pending against him in the states of Massachusetts and Michigan. This information is relevant to the Rule 1100 proceeding as it reflects on the defendant's desire to prolong the time before trial as once he was finished with these proceedings, not only would he have had to serve his back time on the parole, if it had not run before conviction, and the charges presently before the court, but he would also be subject to return to other jurisdictions for trial on outstanding charges there. Since the defendant was released on bond, any delay, rather than being prejudicial to him, would provide an extremely substantial benefit in relation to the other outstanding matters. Whether Judge Nygard, the motions judge, was fully aware of this does not appear on the record

but it most certainly was within the range of knowledge of Judge Juliante and could have been a consideration by him, had he ruled on this motion, in determining whether or not, under the totality of the circumstances, there was prejudice to the defendant.

Other hearings held in this case involved the proceeding before Judge Nygard in 1983 for the return of contraband seized at the defendant's home which Judge Nygard ruled was evidence and could not be returned. On October 19, 1984, there was an extensive hearing in a discovery proceeding on behalf of the defendant. The March 8th omnibus motions included motions to suppress heard on March 6, 1985 involving items seized from the defendant's house by the police after his arrest, evidence in a cocaine case resulting from the search of Mr. Montevecchio's car, material received relating to a search of the defendant's locker at his place of work and the seizure of certain documents and/or records from his employer. In addition to these motions was a motion for change of venue dated March 8, 1984, containing several hundred exhibits relating to the notariety produced by the various cases involving the defendant in this and other matters. This motion was subsequently granted on November 15, 1984 by Judge Juliante; subsequently, by Order dated December 7, 1984, signed by Pennsylvania Supreme Court Chief Justice Nix, the trial of the case was transferred to Beaver County in compliance with Pa.R.Crim.P. 312.

With that factual and procedural background, it is now appropriate to proceed with an evaluation of this matter and the application of the Rules of Criminal Procedure and case law. As a starting point, we look to the sixth amendment right to a speedy trial and how the United States Supreme Court has addressed this issue. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), it was held that the right to speedy trial *does not* per se prejudice the accused's ability to defend himself as does the denial of the right to counsel and the right against self-incrimination. There, it was held that the defendant has

some responsibility to assert his rights and the assertion or failure to assert the right is a factor to be considered by the court. A fixed time period goes further than the Constitution requires and a balancing test on an ad hoc basis must be applied. To be considered are the length of delay, the reason for the delay, the defendant's assertion of his rights and the prejudice to the defendant. It was held in *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976) that *Barker* provides only minimum standards and the Pennsylvania Constitution requires more. *See* Pa.Const. Art. I, Sec. 9. It was held in *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) and *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), that a significant consideration, whether or not there, is prejudice to the defendant. After reviewing a plethora of cases, any attempt to establish a per se rule in Pennsylvania is futile. As a general proposition, it may be stated that not one day shall be excluded from the computation of time under the speedy trial Rule 1100, which is due to prosecutorial impropriety or lack of diligence, when a defendant is proceeding normally to obtain his rights to trial. Not one day shall be included when the defendant, for practical or other reasons, has caused the delay and is unwilling or unprepared to proceed to trial. How this balance is ascertained is to be determined on an ad hoc basis and is established by a preponderance of the evidence. It is necessary for the Commonwealth to move forward with proof as to its diligence, in the face of the allegation by the defendant that his speedy trial rights have been violated. It is the duty of a prosecutor to move a case to trial, but if part of the blame is attributable to privately retained counsel, the entire burden would not be placed on the Commonwealth. *Commonwealth v. Cooley*, 484 Pa. 14, 398 A.2d 637 (1979).

 It is clearly established on the record the defense procured all of the continuations and despite allegations that it was the Commonwealth's refusal to provide mandated discovery materials, the record shows that short of total

capitulation to the demands of defense counsel, the Commonwealth had a right to resist many of these claims and a right to a hearing and a determination by the court as to which claims should be honored. It is apparent this was a hard fought intensely adversarial proceeding, throughout, in which trial counsel attempted to gain every advantage possible pursuant to the rules and to the law. The Commonwealth cannot be charged with creating a delay when procedures were available to the defendant to resolve these matters and if the Commonwealth failed to comply with the rules and the law, to obtain sanctions by the court. When the defendant procures extensions or continuations for the purpose of trial strategy, defense counsel cannot complain of lack of due diligence by the Commonwealth. *Commonwealth v. Guldin*, 502 Pa. 66, 463 A.2d 1011 (1983); *Commonwealth v. Fisher*, 334 Pa.Super. 449, 483 A.2d 537 (1984). Delay attributed to defendant's requested continuances was excludable delay and is measured from the date the continuances were requested to the end of delay. *Commonwealth v. Wade*, 475 Pa. 399, 380 A.2d 782 (1977); *Commonwealth v. Robinson*, 488 Pa. 379, 446 A.2d 895 (1982).

Thus we come to the central considerations involved in this appeal. First is whether the waiver form sent to the appellee on August 28, dated September 8, 1984, with continuance until the trial term following the completion of pre-trial motions, could be an effective waiver of time for purposes of Rule 1100; and secondly, whether the petition for extension filed by the district attorney on September 7, with rule to show cause and hearing date set for September 12, could work as either a waiver or an extension of time within the requirements of Rule 1100.

Admittedly, both considerations present problems and if a strict technical approach is applied, as opposed to a totality of circumstances and consideration of prejudice to the defendant, then dismissal is in order. Whether or not these procedures by the Commonwealth fail to mitigate the strictures of Rule 1100, as we have said before, must be based

on the total record and whether the Commonwealth has effectively established that it did not lack due diligence by a preponderance of the evidence, and whether the defendant was, at least in part, the cause of the failure to technically comply with the rule. Our review of the record indicates that without question the Commonwealth was proceeding with due diligence and that it did what was appropriate to obtain continuations as required by the procedures in Erie County. When there appeared to be a failure on the part of the defendant to respond appropriately to its requests for completion of waiver form, the Commonwealth again proceeded with due diligence to obtain an extension of time from the court. The primary failure here was ministerial in nature and, as to the Commonwealth, shows neither a lack of diligence or procedural due process nor intent or purpose to delay in obtaining the continuations or extension. Rather, it would appear the defendant cooperated neither in his responsibility to complete the continuation or waiver form nor in the alternative, by responding to the notice of hearing in a timely fashion to present any answer or defense that he might have. For at least some purposes this constituted a waiver of any contest he might have presented at a hearing on the Rule 1100 motion in September of 1984. The opportunistic nature of the defense strategy is abundantly evident considering that, in November of 1984, the defense presented a motion to quash three of the five complaints when it calculated, according to its formula, that the time had run under Rule 1100. The defensive response by the district attorney to obtain a waiver at that time, approved by the court, would now be used by the appellee to indicate that the prior waiver and extensions processed in September were thereby superseded. If the prior waiver was valid, and if the extension hearing was duly filed and pending, the subsequent motion and/or Order could not effect their validity. The Commonwealth provided ample reasons for returning the completed waiver to the defendant in September when it was returned late and with a changed date which would, in effect, have nullified, accordingly to the Commonwealth's computations, some of the

time provisions under Rule 1100. A September 7th filing of a motion to extend was a protective act by the Commonwealth against what appeared to be defense counsel's strategy to force error that would result in dismissal of at least some of the cases. In *Commonwealth v. Singleton*, 313 Pa.Super. 224, 459 A.2d 821 (1983), we said the Commonwealth must take every reasonable step that may be expected to move the case to trial and would show by preponderance of the evidence that it exercised due diligence. Also, in *Commonwealth v. Manley*, 282 Pa.Super. 370, 422 A.2d 1340 (1980), we held that a defendant is not required to remind the district attorney about standing petitions to extend time. In *Commonwealth v. Stickle*, 269 Pa.Super. 419, 410 A.2d 327 (1979), this Court held that where the defendant fails to file written answers to a petition by the Commonwealth to extend time in which to commence trial under the speedy trial rule, and the defendant does not appear at an evidentiary hearing on that petition, the defendant has waived his right to contest the extension. Where the defendant fails to file an answer, the Commonwealth's allegations are admitted and due diligence is thereby shown as a matter of law. *Commonwealth v. Hollingsworth*, 346 Pa.Super 199, 489 A.2d 381 (1985). Thus in the motion for extension of time, the Commonwealth at least established that the reason required for an extension of time was due to the defendant's need for more time to proceed with the pre-trial motions. The waiver form signed by the defendant and returned to the Commonwealth, although once again returned by the Commonwealth with an additional copy to have the correct date applied, can be construed to be a binding waiver until and unless the defendant completed a new form with the corrected date. The act of destruction of both forms, and failure to respond to the Commonwealth's attempt to put this waiver on record, can be treated only as a failure of proper recording of the appropriate motions due to the actions of the defendant. Granted, the district attorney should have proceeded to obtain court sanctions or Orders to be entered on the record, but the district attorney cannot be charged with bad

faith and lack of diligence in the face of the actions of the defendant. This case, therefore, falls under that class of cases where the law will not permit a defendant to take advantage of his own actions to delay, interfere or interrupt the normal legal process by either absenting himself from the jurisdiction, having counsel unavailable or in any other way refusing to participate in the proceeding. By his actions, defense counsel failed to assert defense rights to the degree that was required and cannot be heard now to complain that the Commonwealth failed to fulfill its obligations under the speedy trial rule. The Supreme Court of Pennsylvania has held that where there is inadvertent judicial delay, a district attorney's timely filed application may not be rejected when there was a failure to process the complaint by the judiciary. *Commonwealth v. Monosky,* 511 Pa. 148, 511 A.2d 1346 (1986). *See also Commonwealth v. Sheldon,* 469 Pa. 8, 364 A.2d 694 (1976). We perceive no difference in this case from those in which Pennsylvania appellate courts have said that a defendant who fails to make a scheduled appearance when on bail is willfully absent and precluded from relying on the concept of due diligence. *Commonwealth v. Cohen,* 481 Pa. 349, 392 A.2d 1327 (1978); *Commonwealth v. Williams,* 299 Pa.Super. 226, 445 A.2d 537 (1982). *See also Commonwealth v. Brown,* 351 Pa.Super. 119, 505 A.2d 295 (1986). As we have said before, if part of the blame is on privately retained counsel, the entire burden for failing to proceed to a speedy trial cannot be placed on the Commonwealth. *Cooley, supra.*

■ As to the holding by the trial court that the time provided for in the waiver in request for extension was too indefinite and, under *Commonwealth v. Coleman,* 477 Pa. 400, 383 A.2d 1268 (1978), could not be a basis for extension of time, we disagree. In *Commonwealth v. Zabala,* 310 Pa.Super. 301, 456 A.2d 622 (1983), it was found that a defendant executed a valid waiver of a speedy trial under the rules until close of a certain trial term and this could not thereafter be revoked. In this case, there was a time period

that was certain and in compliance with the rules which do not require that it be to a date certain but to a certain period.[1] A trial term of court following the resolution of the pre-trial procedures is a definite period of time within the rules. In each of the waiver forms supplied by the Commonwealth, there is contained a description of each term of court as to its length, when it begins and when it ends. A term of court in this context is a specific period of time. The present case is distinguishable from *Commonwealth v. McLaughlin*, 338 Pa.Super. 615, 488 A.2d 63 (1985) as there no date or period was selected and the defendant could not make a voluntary informed consent to waiver as he was unable to determine the scope thereof. Here, the scope of the waiver is limited only by the resolution of the pre-trial proceedings. In the totality of the circumstances of this case, it was quite evident that the pre-trial procedures would not be completed for several terms of court, and to avoid the constant problem of attempting to locate the defendant to get his signed waiver at the end of each of the preceding periods of waiver, with defense counsel unavailable because of extensive commitments in other trials in other places, a reasonable and prudent expedient was to provide for such a waiver that was tied directly to the end of the discovery procedures.

The provision in Rule 1100 that the record shall so indicate is inapplicable here as it was due to defendant's action that the waiver was unrecorded. The motions judge placed emphasis on the fact that the delay was over two and one-half years, but under the circumstances of this case, that is not a significant factor. In *Commonwealth v. Dowd*, 472 Pa. 296, 372 A.2d 705 (1977), the Supreme Court approved a delay of thirty-one months under the circumstances of that case. A delay of two and one-half years

1. Pa.R.Crim.P. 1100(c) provides:
 (4) Any order granting a motion for extension shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate.

was not considered excessive in *Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981). In *Commonwealth v. Millard,* 273 Pa.Super. 523, 417 A.2d 1171 (1979), this Court held the Commonwealth was not remiss in not filing a petition for extension of time pursuant to a speedy trial statute although 271 days had passed between the filing of the complaint against the defendant and the commencement of his trial, where delay was caused by defendant's unavailability for trial. As we said before, the speedy trial rule is not a per se rule and must be considered in terms of the totality of the circumstances. The right to a speedy trial is one of the most basic rights preserved by the Constitution and in determining whether there has been violation of that right, each case requires analysis of the circumstances and considerations of the rights of society as well as the accused which are protected. U.S.C.A. Const. Amends. 6, 14; P.S. Const. art. 1, § 9 as cited in *Commonwealth v. Roundtree,* 496 Pa. 241, 364 A.2d 1359 (1976). In *Commonwealth v. Briggman,* 325 Pa.Super. 333, 472 A.2d 1145 (1984), we held factors such as severity of the offenses, availability of witnesses, availability of counsel and whether defendant is incarcerated must be considered along with age of the case in determining whether the prosecutor exercised due diligence in bringing the case to trial within the statutory period mandated by the speedy trial rule. In *Commonwealth v. Fooks,* 345 Pa.Super. 145, 497 A.2d 1346 (1985), we held that failure to file speedy trial motions to dismiss prior to commencement of the trial rendered speedy trial claims waived and, in effect, superseded any alleged impropriety on part of the Commonwealth. We might extend that holding to this case in that the failure of the defendant for over one year to move in any way to contest, what apparently was a belief by the Commonwealth that it had an effective long-term extension, was not an assertion of his rights in a prudent fashion.

After careful consideration of the concepts of the totality of the circumstances of the case, due diligence, prejudice to defendant and protection of society, we believe the Commonwealth effectively moved to provide for exclusion of

time within the mandate of the statute. We find that since the defendant was not prepared to go to trial at the time this motion was filed, and in a large measure is responsible for the circumstances presented in the motion, he has not been prejudiced by the technical lack of recording and filing of the September motion to continue.

As to the petition to extend time filed by the Commonwealth, while technically it remained open for imposition of a rule absolute and grant of the Commonwealth's request for an extension, it is unnecessary for us to consider whether it was appropriate for the motions judge to enter an extension Order on that petition in light of our finding above.

The Order of the trial court is vacated; the charges against defendant/appellee are hereby reinstated and the case is remanded for trial.

Jurisdiction relinquished.