555 A.2d 232

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David E. TYLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 1988.

Filed Feb. 22, 1989.

---

13. *In re County Investigating Grand Jury of April 24, 1981,* 500 Pa. 557, 563, 459 A.2d 304, 307 (1983).

Bruce P. Blocher, York, for appellant.

Mark A. Bellavia, Assistant District Attorney, York, for the Com., appellee.

Before KELLY, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of York County following the appellant's conviction on the charges of rape, involuntary deviate sexual intercourse and robbery. The appellant, David E. Tyler, asserts that the Commonwealth did not exercise due diligence in bringing his case to trial, and, as a result, the trial court erred in denying his motion in arrest of judgment based on the Pennsylvania Rules of Criminal Procedure, Rule–1100.[1] After reviewing the circumstances surrounding this case, we affirm this judgment of sentence.

1. This action is based on Rule 1100, as amended October 22, 1981, effective January 1, 1982.

The record reveals the following procedural history: On November 21, 1986, criminal complaints were filed against the appellant, charging him with rape, robbery and involuntary deviate sexual intercourse. Thus, May 20, 1987 was the mechanical run-date for the appellant's trial period under the operation of Rule 1100. At his arraignment on January 29, 1987, the appellant was represented by the Public Defenders Office of York County.

On May 19, 1987, the appellant filed a motion for trial postponement which was unopposed by the Commonwealth. This waiver gave the Commonwealth 120 days from May 21, 1987 to bring the appellant to trial. On May 20, 1987, the Commonwealth filed a petition for extension of the trial date alleging the unavailability of a Commonwealth's witness, the victim. This petition was granted on June 19, 1987, extending the trial period to no later than June 26, 1987. The appellant did not oppose this extension.

On June 17, 1987, the Commonwealth filed a second petition to extend the time for commencement of trial, again alleging the unavailability of the victim. The appellant opposed this petition through privately retained counsel, responding that the Commonwealth had not exercised due diligence in bringing the case to trial. On June 29, 1987, the Commonwealth filed an amended petition to extend. In addition to the unavailability of the victim, the Commonwealth alleged that plea bargain negotiations were on-going and that the appellant had agreed to a continuance to allow his private counsel to take on the case. A hearing was held on July 31, 1987, at which time the petition was granted.

On August 21, 1987, the appellant was convicted on all charges. The appellant filed a motion in arrest of judgment based upon a violation of Rule 1100. Ruling upon that motion, the trial court determined that the Commonwealth did not exercise due diligence in bringing the appellant to trial. However, the court ruled that the appellant was not prejudiced by the delay and, therefor, was not entitled to have the charges dismissed. This appeal followed.

■ We agree with the trial court that the Commonwealth failed to exercise due diligence. The Commonwealth bears the burden of proving prosecutorial due diligence by a preponderance of the evidence. *Commonwealth v. Ehredt,* 485 Pa. 191, 195–196, 401 A.2d 358, 360–361 (1979); *Commonwealth v. Thomas,* 361 Pa.Super. 1, 9–11, 521 A.2d 442, 447 (1987). When reviewing the evidence, we will consider evidence presented by the Commonwealth and evidence which remains uncontradicted by the record as a whole. *Ehredt,* 401 A.2d at 360–361; *Thomas,* 521 A.2d at 447; *Commonwealth v. Hollingsworth,* 346 Pa.Super. 199, 206, 499 A.2d 381, 384 (1985).

In *Commonwealth v. Cottman,* 327 Pa.Super. 453, 476 A.2d 40 (1984), we ruled upon the identical issue now before us. Therein, we stated:

It is well settled that the Commonwealth in order to obtain an extension of time pursuant to Rule 1100(c), need only prove that reasonable efforts were made to secure a witness' attendance. *Commonwealth v. Wroten,* 305 Pa.Super. 340, 451 A.2d 678 (1982); *Commonwealth v. Sharp,* 287 Pa.Super. 314, 430 A.2d 302 (1981). While the Commonwealth must demonstrate that it employed reasonable means to insure the appearance of the witness, it is not necessary that *all* methods be exhausted in order to establish due diligence. *Commonwealth v. Thompkins,* 311 Pa.Super. 357, 457 A.2d 925 (1983). See also *Commonwealth v. Polsky,* 493 Pa. 402, 426 A.2d 610 (1981). *Cottman,* 476 A.2d at 42,

Simply, "[t]he 'due diligence' required of [the Commonwealth] does not demand perfect vigilance and punctilious care, but rather a reasonable effort." *Commonwealth v. Koonce,* 511 Pa. 452, 461, 515 A.2d 543, 548 (1986), quoting *Polsky,* 426 A.2d at 613. See also *Thomas,* 521 A.2d at 447.

In this case, the Commonwealth subpoenaed the victim at her home in Williamsport, Pennsylvania for the trial dates scheduled during the May and June trial terms. However, in both cases, the subpoena was returned unserved. In reference to the May trial date, the Commonwealth and the

York County Police attempted to reach the victim via telephone. The Commonwealth also contacted the Rape Crisis Center where the victim sought counselling. However, these attempts proved fruitless. In reference to the June trial date, the Commonwealth made no attempt to contact the victim other than the subpoena which was returned unserved.

While it is clear that the Commonwealth made a reasonable effort to insure the complainant would attend the appellant's May term trial, it is equally clear that the Commonwealth made no such reasonable effort to insure her presence at the June term trial. The Commonwealth recognized that the victim was reluctant to testify as evidenced by her prior failure to respond to the subpoena for the appellant's first trial date; however, the Commonwealth, in preparation for the appellant's second trial date, did nothing more than send a subpoena to an address from which experience demonstrated a response would not be forthcoming.

■ In effect, the Commonwealth's reasons for a second extension amounted to nothing more than a bare assertion that the witness was unavailable. A bare statement of unavailability, without more, does not establish due diligence under Rule 1100. *Commonwealth v. Schuster*, 288 Pa.Super. 310, 431 A.2d 1063, 1066 (1981); *Ehredt*, 401 A.2d 358. Therefor, we hold that the Commonwealth failed to exercise due diligence in bringing the appellant to trial. Compare *Commonwealth v. Gilliam*, 302 Pa.Super. 50, 448 A.2d 89, 91 (1982) (witness unavailable at *first* trial date, however, due diligence exercised since subpoena was served at *every* known address of the complainant); See also *Commonwealth v. McNeill*, 274 Pa.Super. 257, 418 A.2d 394 (1980) (showing of unavailability at some earlier date does not compensate for Commonwealth's failure to prove unavailability for the remainder of the Rule 1100 period).

■ Even though the Commonwealth failed to exercise due diligence in bringing the appellant to trial, the charges against the appellant will not be dismissed without a finding

that the extension of time prejudiced the appellant. In *Commonwealth v. Montevecchio*, 367 Pa.Super. 435, 533 A.2d 96 (1987), we stated:

> In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), it was held that the right to speedy trial *does not* per se prejudice the accused's ability to defend himself as does the denial of the right to counsel and the right against self-incrimination.... To be considered are the length of delay, the reason for the delay, the defendant's assertion of his rights and the prejudice to the defendant. It was held in *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976) that *Barker* provides only minimum standards and the Pennsylvania Constitution requires more.... After reviewing a plethora of cases, any attempt to establish a per se rule in Pennsylvania is futile. As a general proposition, it may be stated that not one day shall be excluded from the computation of time under the speedy trial Rule 1100, which is due to prosecutorial impropriety or lack of diligence, when a defendant is proceeding normally to obtain his rights to trial. Not one day shall be included when the defendant, for practical or other reasons, has caused the delay and is unwilling or unprepared to proceed to trial. How this balance is ascertained is to be determined on an ad hoc basis and is established by a preponderance of the evidence.... It is the duty of a prosecutor to move a case to trial, but if part of the blame is attributable to privately retained counsel, the entire burden would not be placed on the Commonwealth. *Commonwealth v. Cooley*, 484 Pa. 14, 398 A.2d 637 (1979).

*Montevecchio*, 533 A.2d at 101.

At the July 31, 1987 Rule 1100 hearing, the following exchange occurred between the appellant's counsel, Floyd Jones, Esq., and the court.

> MR. JONES: I went and I talked to Mr. MacVeigh [appellant's public defender], and my recollection is that was the week before the June term of Court. During the conversation, he explained to me they felt the victim was

not going to appear, that she hadn't been appearing or responding to subpoenas.

I indicated to him that, you know, if that was the case, the Mr. Tyler was better to continue with who he had because, obviously, if the case can't go to trial, one way or the other, sooner or later, he's going to win. And my recollection is that I told Mr. MacVeigh if they were prepared to go to trial, that at that point in time, I would enter my appearance and go and ask the Court for a continuance, if they were prepared to go to trial.

THE COURT: In other words, if they went through all the trouble to get the victim here from Williamsport, drag her down here under subpoena and were ready to go to trial, then you'd go in and say, "Wait a second, Your Honor, gee whiz, I'm going to represent the Defendant, I haven't had a chance to look over the defense and we want a continuance." That's the way it works? Just so that we're clear.

MR. JONES: Not exactly, because if I had been aware or if I had been told that the victim had been here in April and May, I wouldn't have done that. But, you know, my problem, as well as any attorney's, is that you have to effectuate the best interest of those persons whom you are responsible to—

THE COURT: And that's the problem the Court has, too.

MR. JONES: And so, I—Miss Stump [the prosecutor], as I recall, had talked to Mr. MacVeigh. She was going in one direction, I was going in another direction, I don't know where I was going—I'm sure I was going to try something, somewhere—and she had indicated to me, you know, that I thought they were calling David Tyler, or something about David Tyler. I said, "If you're ready to go to trial, I'm going to enter my appearance and ask for a continuance." And that was the last I heard for that term of Court; nobody contacted me or came and talked to me about it anymore. And I didn't do anything at that point because I had talked to Mr. MacVeigh and he said

the victim had not come. I thought it would be dismissed. They filed an [Rule 1100] application, I reviewed the application; that's when I filed an Answer and entered my appearance.

Rule 1100 hearing, July 31, 1987, Notes of Testimony, p. 46–48.

■ After hearing this testimony, the Rule 1100 court determined that the Commonwealth had exercised due diligence reasoning that, under the circumstances of this case, issuance of a subpoena was sufficient to meet the requirements of Rule 1100 diligence.[2] One of the reasons relied upon was explained by the hearing court as follows:

And so in that interim period, Mr. Jones was approached to represent the Defendant in the event this case went to trial, and there was some differences with regard to the approach as to this case if, indeed, it did go to trial in June. Had the witness been available, there's absolutely no question in the testimony that a continuance by the defense would have been requested, so that Mr. Jones could have represented the Defendant, and we wouldn't be here today.

Rule 1100 hearing, July 31, 1987, Notes of Testimony, p. 51.

The trial court, ruling upon the appellant's Rule 1100 motion, more clearly explained the logic behind denying the Rule 1100 dismissal.

In the case at bar, defendant not only was not prejudiced by the delay, but was hoping to capitalize upon it. If the witness was produced, private counsel was going to re-

**2.** It is arguable that the Commonwealth did meet the totality of the circumstances standard espoused in *Commonwealth v. Long,* 288 Pa.Super. 414, 432 A.2d 228 (1981) and *Commonwealth v. Thompkins,* 311 Pa.Super. 357, 457 A.2d 925 (1983). This was the basis for the Rule 1100 hearing court's decision to grant an extension. The court reasoned that the Commonwealth's act of serving a subpoena was sufficient to meet due diligence requirements since the defense concedes that, had the witness attended the trial, new counsel would have entered his appearance and requested a continuance. However, since there is no guarantee a continuance would have been granted, we decline to find that the Commonwealth's actions were adequate to comply with the requirements of due diligence. See Pa.R.Crim.P. Rule 301.

quest a continuance to enable him to prepare the case, but if the witness was not produced, the Public Defender would appear for trial and ask for the charges to be dismissed under a violation of Rule 1100. See Transcript of Rule 1100 hearing, p. 46–47. Counsel for the defendant was attempting to play both sides of the fence, a charade which would waste the court's time and the district attorney's efforts to produce the witness. We do not believe that the defendant should be permitted to proceed in this less than forthright manner and then allowed to benefit thereby. We find that the defendant was not prejudiced by the delay, despite the Commonwealth's lack of due diligence.

Trial Court Opinion, p. 8–9.

■ Applying the prejudice analysis delineated in *Montevecchio, supra,* we are persuaded to agree with the trial court's assessment of the situation. Herein, we are presented with a unique situation, wherein the appellant was, in effect, represented by both private counsel and the public defender office *at the same time* during his pre-trial period. This dual representation gave the appellant the power to wait and see whether the complainant would appear for the second trial date. If the victim appeared, then the appellant's private counsel would appear and request a continuance, further postponing the appellant's trial. However, if the victim did not appear, then the appellant would move to have his case dismissed for violation of Rule 1100. Such disingenuous duplicity by the appellant only serves to waste the valuable resources of the Commonwealth and the Judiciary and is repugnant to the fair and economical administration of criminal justice.

We simply will not allow a defendant to employ a trial strategy which he admits was designed specifically to thwart his prosecution by using, in a less than forthright manner, the purely administrative Rule 1100. See *Montevecchio,* 533 A.2d at 101 (defense cannot complain of lack of due diligence when trial strategy procures extensions or continuations); *Commonwealth v. Guldin,* 502 Pa. 66, 463

A.2d 1011 (1983); *Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981). While we most certainly do not condone the Commonwealth's lack of due diligence, we are unable to ascertain, and the appellant fails to assert, any prejudice which may have befallen the appellant as a result of the delay. The delay was relatively short in duration— only one month past the run-date extension of 120 days requested by the appellant on May 19, 1987. Most importantly, the delay was one which the appellant freely admits he would have requested in the form of a continuance had he gone to trial during the June trial term. Accordingly, we affirm the judgment of sentence.

JUDGMENT OF SENTENCE AFFIRMED.