578 A.2d 461

**COMMONWEALTH of Pennsylvania**

v.

**James BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 19, 1990.

Filed July 24, 1990.

Robert F. Simone, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com.

Before ROWLEY, MCEWEN and JOHNSON, JJ.

ROWLEY, Judge:

This is an appeal by James Brown from the judgment of sentence entered January 12, 1989. Appellant raises the following four issues on this appeal: 1. whether the trial court erred in allowing appellant to be extradited to New Jersey against his wishes when more serious charges were pending against him in Pennsylvania resulting in a violation of appellant's right to a speedy trial; 2. whether the trial court erred in excluding lay and psychiatric testimony highly relevant to and probative of appellant's defense of diminished capacity; 3. whether the trial court improperly failed to suppress statements made in clear derogation of appellant's Sixth Amendment rights; and 4. whether appellant's constitutional rights were violated by selection of an array of potential jurors which failed to accurately reflect the minority population of the city. We have reviewed these issues and affirm the judgment of sentence.

Appellant was arrested in North Carolina on a federal fugitive warrant on April 16, 1985 for murder in the first degree, conspiracy, aggravated assault, and robbery. He was extradited to Philadelphia in the company of two Philadelphia detectives. On October 23, 1985, appellant appeared before Judge Richette and entered a plea of guilty to murder; however, appellant was permitted to withdraw that plea on November 1, 1985. On February 5, 1986, appellant appeared before Judge Richette and waived his right to a speedy trial under Pa.R.Crim.P. 1100 until June 4, 1986.

On May 13, 1986, appellant once again waived Rule 1100 until October 22, 1986. At this time, the court set a trial date of September 22, 1986. New defense counsel was unavailable or unprepared for this date, as well as for subsequent trial dates, and appellant requested numerous continuances. On January 7, 1987, appellant waived Rule 1100 until June 30, 1987.

To further confuse matters, Governor's warrants from New Jersey were lodged against Brown for a murder committed in that state on June 2, 1984. The Governor of Pennsylvania had no objection to delaying extradition until the Pennsylvania charges were settled. A habeas corpus hearing was held on May 20, 1987 at which time Judge Hirsh ordered a stay of extradition pending disposition of the Pennsylvania charges.

On May 11, 1987, appellant's counsel was permitted to withdraw and a third attorney had to be appointed. On May 26, 1987, the Commonwealth then filed a petition to extend the time limitations of Rule 1100 until October 28, 1987 and Judge Durham granted the extension on May 29, 1987. Trial was set for September 29, 1987. Also on May 29, the order staying extradition was lifted and appellant was turned over to the State of New Jersey. Appellant pled guilty to manslaughter in New Jersey on June 3, 1987 and was sentenced on July 30, 1987. Appellant then fought extradition from New Jersey and was not returned to Pennsylvania until March, 1988. The Commonwealth filed Petitions to Extend under Rule 1100 during this time because of the unavailability of appellant. On March 29, the Commonwealth filed a petition to extend the run date of February 25 until June 24. The petition was granted and the case was placed in the ready pool. Appellant was brought to trial the following month.

On May 6, 1988, appellant was convicted on all counts. The jury could not unanimously agree to impose the death penalty; therefore, the trial court sentenced appellant to life imprisonment. Appellant filed post-verdict motions and supplemental post-verdict motions which the trial court de-

nied. The trial court sentenced appellant to five to ten
years imprisonment for criminal conspiracy, ten years re-
porting probation for the assault charges, ten to twenty
years imprisonment for robbery and the life imprisonment
sentence for first-degree murder. These sentences were to
run concurrently with appellant's New Jersey sentence.
Appellant then filed a Motion to Reconsider Sentence which
the trial court denied. Appellant filed this appeal on Janu-
ary 23, 1989 raising the four issues set forth below.

I. The trial court erred in allowing appellant to be extradit-
ed to New Jersey against his wishes when more serious
charges were pending against him in Pennsylvania re-
sulting in a violation of appellant's right to a speedy
trial.

Appellant first claims that his right to a speedy trial was
violated because the trial court did not view the withdrawal
of his guilty plea as triggering the 120 day period the
Commonwealth had in which to bring him to trial. When
discussing this issue in the trial court opinion, the trial
judge viewed appellant's plea withdrawal as a game that
appellant was playing with the court system. In addition,
the trial judge stated the following:

[f]or us, the single most important feature is the fact that
Brown already had his trial in Pennsylvania when he was
assigned to the court of Judge Lisa Richette for trial on
October 23, 1985 [when appellant's guilty plea was ac-
cepted]. . . . Since defendant actually had his trial in
Philadelphia, he has no legitimate complaint that his
speedy trial rights were violated because of his extradi-
tion to another state.

Trial court opinion at p. 16.

Because of this discussion, appellant infers that the trial
judge considered the withdrawal as a factor to be weighed
against him and that the trial court failed to view the
withdrawal of the guilty plea as triggering another 120 day
period. We do not agree that the above discussion means
the trial judge did not view appellant's withdrawal of his

guilty plea as triggering the 120 day period; however, even assuming that the trial judge did mean this, we may affirm the trial court's decision on a basis other than that relied on by the trial court. *Commonwealth v. Toanone*, 381 Pa.Super. 336, 553 A.2d 998 (1989). Regardless of the trial judge's unfavorable opinion of appellant's motives, we have reviewed the record and have found that appellant's Rule 1100 rights were not violated.

Appellant was arrested on April 16, 1985. Because appellant's whereabouts had been unknown and he could not be apprehended, the 180–day period provided for in Pa.R.Crim.P. 1100 commenced on this date, rather than the date the written complaint was filed. Pa.R.Crim.P. 1100(c)(1). On July 1, 1985, appellant waived his Rule 1100 rights until November 6, 1985. Any period of time for which a defendant waives Rule 1100 is excluded from the applicable time period. Pa.R.Crim.P. 1100(c)(2). On October 23, 1985, appellant pled guilty to murder before Judge Richette, who found him guilty beyond a reasonable doubt. On November 1, 1985, appellant withdrew that guilty plea. For Rule 1100 purposes, trial commences when a guilty plea is entered by a defendant and accepted by the trial court. *Commonwealth v. Bytheway*, 290 Pa.Super. 148, 434 A.2d 173 (1981). Furthermore, when a defendant subsequently withdraws his guilty plea, the Commonwealth has 120 days to commence new trial, as dictated by Rule 1100(d)(1). *Commonwealth v. Lewis*, 295 Pa.Super. 61, 440 A.2d 1223 (1982) (en banc). Therefore, the Commonwealth had 120 days after November 1, 1985 in which to begin another trial. On February 5, 1986, within that 120 day period, appellant himself requested a continuance and waived his Rule 1100 rights until June 4, 1986.

Subsequently, both appellant and the Commonwealth requested various continuances over a two-year period and trial was eventually set for June 26, 1987. In his brief, appellant notes that the purpose of these extensions was to allow both the prosecution and the defense to prepare for

trial. Apparently, appellant has no complaint with these extensions.

On May 29, 1987, a hearing was held before Judge Durham to determine whether another extension should be granted to the Commonwealth so that appellant could be extradited to New Jersey to stand trial on the charges which were pending there. Although appellant wished to stand trial in Pennsylvania first, Judge Durham granted the extension and appellant was extradited to New Jersey. Appellant now claims that this extension was improperly granted.

At the hearing, the judge was informed that new defense counsel had just been appointed and had not yet received discovery from previous counsel. New counsel did not contend that he could have been prepared for trial by the time of the then existing run date which was June 30, 1987. Furthermore, trial was scheduled in New Jersey for the following week. A grant of an extension will not be overruled on appeal absent an abuse of discretion by the trial court. *Commonwealth v. Lohr*, 503 Pa. 130, 468 A.2d 1375 (1983). Based on the above facts, we find that the trial court did not abuse its discretion in granting the extension so that appellant could be extradited to New Jersey to stand trial there first.

When appellant was extradited to New Jersey, the trial date for the Pennsylvania charges was set for September 29, 1987 and the Rule 1100 run date was October 28, 1987. On June 3, 1987, appellant pled guilty to aggravated manslaughter in New Jersey and on July 30, 1987, he was sentenced for that crime. Appellant then fought extradition from New Jersey back to Pennsylvania and was not returned until March, 1988. While the proceedings against appellant in New Jersey were concluded almost two months prior to the September trial date, and appellant admits in his brief that this trial date was well within the 120 day limit, he now claims that his Rule 1100 rights were violated by his extradition to New Jersey.

■ Rule 1100(c)(3)(i) provides that the unavailability of a defendant or his attorney tolls the running of the 120 days which the Commonwealth has to bring a defendant to trial. A defendant who is incarcerated in another state will be considered unavailable for the purposes of Rule 1100 for the period of time that he is absent despite the Commonwealth's diligent efforts. *Commonwealth v. Lloyd*, 370 Pa.Super. 65, 535 A.2d 1152 (1988), *appeal denied*, 518 Pa. 637, 542 A.2d 1367 (1988); *Commonwealth v. Maxwell*, 355 Pa.Super. 575, 513 A.2d 1382 (1986), *allocatur granted*, 513 Pa. 633, 520 A.2d 1384 (1987), *appeal dismissed*, 569 A.2d 328 (1990).

■ . While appellant was in New Jersey fighting extradition back to Pennsylvania, the Commonwealth filed petitions for extensions of Rule 1100. Because of appellant's unavailability, these extensions were granted. We find that the trial court did not abuse its discretion in granting the Commonwealth's petitions to extend when appellant was absent from Pennsylvania by his own doing.

On March 29, 1988, the Commonwealth was granted a petition to extend the Rule 1100 run date until June 24, 1988. Appellant's trial began on April 29, 1988. This trial date was within the original 120 day period, as properly extended.

■ Appellant contends that the Commonwealth was not diligent in bringing him to trial because it knew or should have known that he would not waive extradition back to Pennsylvania. This contention is meritless. Furthermore, even had the Commonwealth failed to exercise due diligence, charges will not be dismissed without a finding that the extension of time prejudiced the defendant. *Commonwealth v. Tyler*, 382 Pa.Super. 384, 555 A.2d 232 (1989), *allocatur denied*, 523 Pa. 631, 564 A.2d 1260 (1989). Appellant claims he was prejudiced in that, as a result of his conviction of voluntary manslaughter in New Jersey, his diminished capacity defense to the Pennsylvania charges

was rendered useless. To support this contention, appellant points to 42 Pa.C.S.A. § 9715 which provides:

Any person convicted of murder in the third degree in this Commonwealth who had previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

■ Appellant asserts that had his diminished capacity defense been successful, the jury would have found him guilty of murder in the third degree as opposed to murder in the first degree, but he would have still been sentenced to life imprisonment because of § 9715. Therefore, the extradition and conviction in New Jersey prejudiced his later trial in Pennsylvania. Appellant overlooks one important factor in making this analysis, i.e., his diminished capacity defense was not successful and the jury found him guilty of first-degree murder, not third-degree murder. Appellant then received a life sentence because the jury could not unanimously agree to impose the death penalty. The earlier conviction in New Jersey had no bearing on appellant's conviction in Pennsylvania; therefore, appellant was not prejudiced by his extradition to New Jersey.

II. The trial court erred by preventing testimony during the verdict phase of the trial by appellant's expert psychiatrist and appellant's mother regarding certain past schizophrenic episodes that directly related to his defense of diminished capacity. The court also erred in not allowing the court appointed psychiatrist to testify as to the competency of the appellant prior to jury selection.

■ A defendant who raises a diminished capacity defense concedes general criminal liability, but challenges his capacity to premeditate and deliberate at the time of the criminal act. *Commonwealth v. Walzack,* 468 Pa. 210, 360

A.2d 914 (1976). It is an extremely limited defense and psychiatric testimony is only competent "on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where ... it does not, it is irrelevant and hence inadmissible." *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344, 1347 (1982). *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Furthermore, personality disorders or schizoid or paranoid diagnoses are not relevant to a diminished capacity defense. *Id.*

 The defense called both a psychologist and a psychiatrist who testified extensively about appellant's mental history. The trial judge permitted testimony as to appellant's psychiatric history as long as it related to appellant's capacity for premeditation and deliberation at the time of the murder. Appellant now argues that because the psychiatrist and his mother were not permitted to detail specific incidents of past schizophrenic episodes, his diminished capacity defense was severely limited. We agree with the trial court that a detailed description of appellant's past bizarre behavior is not relevant to appellant's alleged diminished capacity at the time of the criminal act.

III. Appellant neither made any of the incriminating statements claimed by the prosecution, nor did he waive his rights to silence and counsel. Therefore, any evidence regarding any alleged confession by appellant must be suppressed.

 At the Suppression Hearing, Detective Cohen, who escorted appellant from North Carolina to Philadelphia, testified that appellant made incriminating statements after a knowing and voluntary waiver of *Miranda* rights. Appellant contends that the police fabricated these statements as evidenced by the fact that appellant did not sign the statements. The trial court made a factual finding that appel-

lant did make the statements and admitted these statements into evidence at trial. When reviewing a suppression issue, we are bound by the trial court's findings of fact if they are supported by the record. *Commonwealth v. Pine*, 370 Pa.Super. 410, 536 A.2d 811 (1988), *allocatur denied*, 519 Pa. 653, 546 A.2d 57 (1988). Furthermore, questions of credibility will be resolved by the suppression court as fact-finder. *Id.* Because there is support in the record for the trial court's finding that appellant did make the statements, such as Detective Cohen's testimony, we will not disturb that finding.

IV. The trial court did not select an array of potential jurors that accurately reflected the minority population of the city. Therefore, the court deprived appellant of his rights granted by the Sixth Amendment to the United States Constitution.

██ Appellant claims that, because the array of potential jurors was drawn from voter registration lists which do not accurately reflect the percentage of minorities residing in Philadelphia, his right to a fair trial under the Sixth Amendment was violated.

Pa.R.Crim.P. 1104 provides as follows:

(b) Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than five days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.

(c) A challenge to the array may be made only on the ground that the jurors were not selected, drawn or summoned substantially in accordance with law.

Without claiming that the opportunity did not exist earlier, appellant's counsel raised the objection during the third

day of jury selection in violation of the time provisions of Rule 1104(b). Also, the objection was made orally, and not in writing as required by Rule 1104(b). In *Commonwealth v. Jackson,* 336 Pa.Super. 609, 486 A.2d 431 (1984), a similar objection was made after several potential jurors had been questioned. The Superior Court held that the objection was untimely and any objection appellant may have had was waived.

The trial court in this case held that, because the objection was not in accordance with the procedure set out in Pa.R.Crim.P. 1104, the issue was waived. We agree.

■ In addition, assuming, without deciding, that this objection was not waived, selecting prospective jurors from voter registration lists is not unconstitutional "simply because one identifiable group of individuals may vote in a proportion than lower that of the general population." *Commonwealth v. Jones,* 465 Pa. 473, 479, 350 A.2d 862, 866 (1976).

For the abovementioned reasons, we find no merit to appellant's arguments.

The judgment of sentence is affirmed.